IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRYANT H. HARVEY, JR.,** | |
| **Plaintiff,** | |
| v. | Case No. 20-cv-00040-SPM |
| **DEE DEE BROOKHART, RUSSELL GOINS, TAIJA ATKINS, LORIE CUNNINGHAM, ASHLEY MCCASLIN, MATT BOSECKER, LEIF MCCARTHY, BRYAN PERDUE, THOMAS STUCK, SHEILA LEWIS, JEREMY GIVENS, ALAN CARTER, TAMMY WELTY, PAMELA WARD, and LACIE LIVINGSTON,** | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on the motion for summary judgment on the issue of failure to exhaust administrative remedies filed by Defendants Tammy Welty and Pam Ward. (Doc. 51). Plaintiff Bryan Harvey filed a response in opposition, and Defendants filed a reply brief.[1] (Docs. 62, 63). On July 23, 2021, the Court held an evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). For the reasons set forth below, the motion for summary judgment is granted.

---

[1] Defendants cite misapplication of the law by Harvey in his response as exceptional circumstances warranting a reply. *See* SDIL-LR 7.1

## BACKGROUND

Plaintiff Bryant Harvey, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Graham Correctional Center, alleges his constitutional rights were violated while he was housed at Lawrence Correctional Center ("Lawrence"). Harvey claims that after repeatedly notifying Lawrence staff that his cellmate was threatening him and requesting to move cells, he was attacked by his cellmate on July 19, 2019. Following the attack, he was sent to an outside hospital for his injuries where he received ten staples in his head. Upon his return to Lawrence, while in the infirmary, Defendants Nurse Tammy Welty and Nurse Pam Ward failed to redress his bloody bandages, apply antibiotic ointment, and to provide medication for migraines, dizziness, and pain. (Doc. 23, p. 14, 17). In retaliation for filing grievances, Welty further denied Harvey adequate care by refusing to allow him to go to the healthcare unit for breathing treatments and to provide him pain medication on more than three occasions. (*Id.* at p. 15, 18).

Following a preliminary review of the First Amended Complaint, Harvey is proceeding on an Eighth Amendment deliberate indifference claim against Ward and Welty for failing to change Harvey's bandages and provide medication for his injuries following the attack (Count 2), a First Amendment claim against Welty for retaliating against Harvey for filing grievances (Count 3), and an Eighth Amendment deliberate indifference claim against Welty for denying Harvey breathing treatments and pain medication (Count 4). (*See* Docs. 11, 22, 23).[2]

## LEGAL STANDARDS

### *I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] The Court addresses only the allegations brought against Defendants Ward and Welty in the First Amended Complaint.

*See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id.* at 742.

## II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim

can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Harvey was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the

response, he can file an appeal with the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

## ANALYSIS

The Court first notes that Defendant Welty does not seek summary judgment as to Counts 3 and 4. In the motion for summary judgment, Defendants mistakenly state that the First Amended Complaint did not change the allegations as to them, and Harvey is only proceeding against them on an Eighth Amendment claim for failing to provide him adequate medical treatment following the altercation with his cellmate (Count 2). (Doc. 52, p. 2). After the Court conducted a preliminary review of the First Amended Complaint on May 19, 2020, Harvey is now proceeding with Count 2 against Ward and Welty, as well as Counts 3 and 4 against Welty for failing to provide pain medication and breathing treatments to Harvey in retaliation for filing grievances. (*See* Doc. 22). Despite Defense Counsel's arguments presented at the hearing, the Court will not construe the motion for summary judgment to apply to all claims against Defendants. Because Defendant Welty has not filed a motion for summary judgment as to Counts 3 and 4 or requested for an extension to do so by the Court's deadline, the affirmative defense is deemed waived as to these Counts. *See Brunswick Leasing Corp. v. Wisc. Cent., Ltd.,* 136 F. 3d 521, 530 (7th Cir. 1998) ("As a general matter, an affirmative defense that is not timely pleaded is waived.").

Defendants Ward and Welty argue that they are entitled to summary judgment as to Harvey's claim that they denied him proper treatment for his injuries following the attack by his cellmate (Count 2). (Doc. 52). The parties agree that the only grievance relevant to this claim is a grievance dated July 25, 2019. In this grievance, Harvey complains that on July 25, 2019, he asked

Nurse Ward for pain medication, a breathing treatment, and a dressing change for his head wound, and she denied all of his requests. (Doc. 52-1, p. 145). He further claims that on the previous day, July 24, 2019, he asked "a nurse" to change his bandages, and the nurse said she would but went for a cigarette break and never returned. (*Id.* at p. 146). This grievance was submitted to a Counselor and then to a Grievance Officer. The Grievance Officer recommended that the grievance be denied, and on September 20, 2019, the CAO concurred in the recommendation. (*Id.* at p. 144). Harvey then appealed the grievance to the ARB. The grievance was received by the ARB on November 8, 2019. Because the grievance was not appealed within 30 days of the CAO's decision, the ARB returned the grievance to Harvey without a determination on the merits. (*Id.* at p. 143).

Defendants first assert that this grievance does not serve to exhaust Harvey's claim in Count 2 against Nurse Welty because the grievance does not include any allegations against her or mention her by name or description. Based on an earlier unrelated grievance dated June 9, 2019, Harvey knew Welty's name but chose not to identify her, thwarting the prison's ability to investigate her alleged conduct. (Doc. 52, p. 3) (citing Doc. 52-1, p. 184-85). Thus, the grievance could not have put the prison on notice of any complaints about her. (Doc. 63, p. 2) (citing *Hoskins v. Johnson,* No. 19-cv-1303-GCS (S.D. Ill. Dec. 10, 2020) (granting summary judgment on exhaustion where the record demonstrated the plaintiff knew the defendant by name at the time he filed the grievance but did not name her in the grievance).

Next, they argue the grievance was not timely appealed and thus, cannot serve to exhaust against either Welty or Ward. Defendants dispute Harvey's assertion that he placed the grievance in the prison mail system on October 3, 2019. (Doc. 63, p. 4). They contend that Harvey's claim that he timely mailed the grievance, even though the ARB received the grievance over a month

later, is inconsistent with the time in which the ARB received other appealed grievances from Harvey around the same time frame. His ARB records indicate that he mailed a grievance in the same manner on October 20, 2019 that was received by the ARB on November 7, 2019. (*Id.*) (citing 52-1, p. 160). Harvey provides no explanation for why there is a delay in receipt only as to the July 25 grievance or how the delay in receipt by the ARB was caused by prison officials' conduct. Because a mistake by the prisoner in following grievance procedures cannot absolve him from the PLRA requirements, the grievance was not timely appealed and did not exhaust his claims. (Doc. 63, p. 3) (citing *Cannon v. Washington,* 418 F. 3d 714 (7th Cir. 2005)).

In response, Harvey argues that the grievance contains sufficient detail to alert prison officials to the nature of his medical treatment problems, and he was not required to specifically name Welty in his grievance. He points to the language in the grievance addressing issues with all employees at Lawrence:

> Lawrence C.C. and its employees have a practice of disregarding an offenders [sic] serious medical needs and act with pure deliberate indifference to one's serious medical conditions and the warden of the facility is not by any means taking executive actions into fixing the obviously broken practices Lawrence has [illegible] conducting the duties of their job performances.

(Doc. 62, p. 6) (quoting Doc. 62-1, p. 5). Harvey contends that this language notifies Lawrence officials that he had a problem with more than one nurse regarding his medical care and that the entire nursing staff was being deliberately indifferent to his serious medical needs. The argument that Harvey properly notified prison administration that he had issues with the nursing staff supported by the responses by prison grievance staff. The counselor wrote that he reviewed the care provided by "nurses." (*Id.* at p. 7) (citing Doc. 62-1, p. 4). Likewise, the grievance officer noted that in investigating the complaints, the healthcare administrator reviewed the care that Lawrence "nurses" provided, not just Ward. The grievance officer also records that Harvey

"complains Lawrence CC and its employees have a practice of disregarding offenders' serious medical needs." (*Id.*) (quoting Doc. 62-1, p. 3). Based on the actions of the Counselor and Grievance Officer, Harvey sufficiently notified prison administration that he received inadequate medical treatment by nursing staff, which includes Welty.

Additionally, Harvey claims that the grievance was timely appealed. He placed the grievance in the prison mail to be sent to the ARB on October 3, 2019, within the 30 day deadline, and it is unclear why the ARB did not receive the grievance until November 8, 2019. (Doc. 62). As evidence that he timely submitted his appeal, he provides a copy of a certificate of service dated October 3, 2019. (Doc. 62-1, p. 7). Once placed in the prison mail system, he argues he cannot be held responsible for the fact the ARB received the grievance late. (Doc. 62, p. 5) (citing *Dole v. Chandler,* 438 F. 3d 804 (7th Cir. 2006)).

At the hearing, Harvey testified that he mailed the grievance on October 3, 2019, by placing the grievance in his cell door to be picked up by staff. Once the grievance was retrieved by staff, he did not see the grievance again or have any control over it. Heather Cecil, who supervises the mailroom at Lawrence, testified that correctional officers pick up the mail from inmates' individual cells each morning between 7:00 a.m. and 8:00 a.m. and place the mail into bags. Heather Cecil then picks up the mailbags around 9:30 a.m. and processes the mail. All mail that is sent to the ARB is deemed privileged mail and so processed and mailed the same day it is received by the mailroom. The United States Postal Services arrives at Lawrence around 2:30 p.m. to drop off and pickup mail. Adewale Kuforiji, who reviews and responds to grievances sent to the ARB, testified that it takes five days for mail to be sent from Lawrence to the ARB. Once received by the ARB, the grievance is date stamped with the day the grievance was delivered by the United States Postal Service.

Based on the record and the testimony presented at the hearing, the Court does not find Harvey's testimony credible. Heather Cecil testified that she was unaware of an incident at Lawrence where there was a delay in mail being delivered to the mailroom for processing once it was collected from the inmates or where mail was mistakenly withheld for 30 days before mailing. Adewale Kuforiji also testified that during his time employed by the ARB, he has not experienced a delay in date stamping grievances on the day they are received from the United States Postal Services. Both Cecil and Kuforiji stated that they were unaware of significant delays on the part of the United States Postal Service in October of 2019.

Harvey does not refute their testimony. He does not allege other incidents or a pattern of mail delay or mishandling of his grievances at while at Lawrence. He simply contends that once correctional staff picked up his July 25 grievance on October 3, 2019, he does not know what caused the delay. Harvey speculates that that delay could have been caused by staff at Lawrence, the ARB, or the United States Postal Service.

The record, on the other hand, indicates that Harvey had a pattern of mailing multiple grievances to the ARB at the same time, regardless of the deadlines to appeal the individual grievances or even grievance procedure. Along with the July 25 grievance, his certificate of service indicates that he also mailed three other grievances to the ARB. (Doc. 62-1- p. 6-7). One of the grievances had an appeal deadline of October 9, 2019, yet allegedly he did not mail it until October 3, 2019. (*See* Doc. 52-1, p. 140). On June 7, 2019, the ARB received 5 grievances dated November 14, 2018, December 10, 2018, December 13, 2018, December 21, 2018, and March 6, 2019. (Doc 52-1, p. 253-262). The ARB determined that none of these grievances had received the proper responses at the institutional level and determined that they were untimely submitted. On August 12, 2019, the ARB received 8 grievances from Harvey, with varying dates ranging from March

16, 2019 through June 16, 2019. (*Id.* at p. 186-216). On September 9, 2019, the ARB received 2 grievances. (*Id.* at p. 171, 182). On September 16, 2019, the ARB received 3 grievances. (*Id.* at p. 171). Again, the ARB determined that Harvey had not provided the required responses at the institutional level for all three of these grievances.

Additionally, at the hearing, Harvey testified that he did not know Nurse Welty's name when he submitted the July 25 grievance, but the record indicates he previously named Welty in a grievance dated June 9, 2019. (Doc. 52-1, p. 184-185; Doc. 73). When asked about this earlier grievance, Harvey testified that he did not recall filing it.

As to the certificate of service, Harvey confirmed at the hearing that the certificate is signed and dated prior to him placing it, along with his grievances, in a sealed envelope for mail pickup. Thus, the date on the certificate is not necessarily indicative of the date the grievance was placed into the prison mail system.

Defendants have met their burden of proving that the administrative process was available to Harvey. Because Harvey has not presented any evidence demonstrating that his administrative remedies where unavailable to him, his pattern of disregarding grievance procedures as made evident in the record, and the inconsistencies in his testimony, the Court finds that he failed to timely appeal the July 25 grievance. Therefore, Harvey did not exhaust his administrative remedies regarding his claims as alleged in Count 2 against Welty and Ward, and the Court grants summary judgment.[3]

## DISPOSITION

For the reasons provided, the Motion for Summary Judgment (Doc. 51) filed by Defendants

---

[3] Because the Court finds that the July 25 grievance was untimely submitted to the ARB, the Court will not address the arguments regarding whether the grievance contained sufficient detail to alert the prison of Harvey's claims against both Defendants.

Ward and Welty is **GRANTED**. The Court dismisses without prejudice Count 2 against Defendants Ward and Welty. Defendant Ward is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of this case.

This matter shall proceed on the following remaining claims:

**Count 1:** Eighth Amendment failure to protect claim against McCaslin, Atkins, Brookhart, Cunningham, Goins, Carter, Lewis, McCarthy, Stuck, Boesecker, Purdue, Givens, and Livingston for failing to protect Harvey from his cellmate after several complaints and requests to be moved, and cries for help.

**Count 3:** First Amendment claim against Boesecker, Lewis, Welty, Atkins, Brookhart, and Goins for retaliating against Harvey for filing grievances.

**Count 4:** Eighth Amendment deliberate indifference to a serious medical need claim against Welty, Lewis, and Boesecker for denying Harvey various medical treatments.

The stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED:   August 2, 2021**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**